UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


SHERNITA GREEN                              *     CIVIL ACTION

VERSUS                                      *     NO. 04-3101

PRUDENTIAL INSURANCE COMPANY                *     SECTION "L"(2)
OF AMERICA

ORDER AND REASONS

Before the Court are the Motions for Summary Judgment of Plaintiff and Defendant, and

Defendant's Motion to Strike the Affidavit of Shernita Green.  For the following reasons,

Defendant's Motion to Strike the Affidavit of Shernita Green is GRANTED.  Plaintiff's Motion

for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is

GRANTED.

**I.  Defendant's Motion to Strike the Affidavit of Shernita Green**

As a preliminary matter, the Defendant, Prudential Insurance Company of America

("Prudential"), has filed a Motion to Strike the Affidavit of Shernita Green.  The affidavit in

question is from the Plaintiff, Shernita Green, describing her disabled condition.  Ms. Green

argues that the affidavit adds nothing to the administrative record, but instead summarizes

pertinent facts within the record to support her Motion for Summary Judgment.

The case law in the Fifth Circuit is clear that, when assessing factual questions in ERISA

disputes, the district court is limited to review of the administrative record.  *Estate of Bratton v.*

*National Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000); *Vega v. National Life Ins.*

*Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).  The district court may not accept evidence

outside of the administrative record, with certain limited exceptions.  *Vega*, 188 F.3d at 299.  A court may accept evidence regarding the administrator's interpretation of terms of the plan in other instances, and may accept evidence like expert opinion that assists the court in understanding medical terminology or practice.  *Id.*  However, neither of these two exceptions apply to Ms. Green's affidavit.

The purpose of the limitation on the district court's review is to encourage plaintiffs to submit all relevant evidence at the administrative stage and to make good faith efforts to resolve claims with the administrator prior to filing suit.  *Id.*  This purpose would be defeated by admission of Ms. Green's affidavit.  Accordingly, Defendant's Motion to Strike the Affidavit of Shernita Green should be GRANTED.

## II.  Factual and Procedural Background

This is an action on a long-term disability insurance policy (the "Policy") issued by Defendant Prudential Insurance Company of America and provided to Plaintiff Shernita Green through her employer, Bank One Corporation ("Bank One").  Prior to claiming disability, Plaintiff was employed as a Customer Service Associate for Bank One.  Her duties involved basic bank teller activities and interacting with customers and invitees of Bank One.  Plaintiff and Prudential describe this position as "light," meaning Plaintiff frequently must lift up to 10 pounds, occasionally must lift up to 20 pounds, and/or she must frequently walk or stand, and/or there is constant pushing and pulling. (pru-green-0254; pru-green-0011-13).  Plaintiff alleges that, beginning in December 2002, she has suffered from a disabling seizure disorder and other physical ailments.   Plaintiff did not return to work between February 19, 2003 and January 1, 2004, the period relevant to the instant motions.

In 2003, Plaintiff applied for disability benefits under Bank One's plan with Prudential,

and Plaintiff received benefits from June 28, 2003 to December 31, 2003.  (pru-green-0032).  On

May 17, 2004, Prudential concluded that Plaintiff's disability had improved and terminated

Plaintiff's benefits effective January 1, 2004.  *Id.*  Plaintiff pursued her avenues for appeal

through Prudential, and her third and final appeal was denied on July 26, 2004.  (pru-green-

0025).  On November 15, 2004, Plaintiff filed the instant suit in the Eastern District of Louisiana

pursuant to the Employee Retirement Income Security Act (ERISA) of 1974.

**A.  Medical Condition of the Plaintiff**

     **1.**       **Seizure Disorder**

     On December 19, 2002, while at work, Plaintiff suffered a seizure.  (pru-green-0233 and

-0277).  Plaintiff was taken to Pendleton Memorial Methodist Hospital, where she underwent an

electroencephalogram (EEG) which showed abnormal results with right fronto-temporal slowing

with spikes and sharp waves.  (pru-green-0167-68).  Also, a cervical spine series performed at

that time showed a slightly diminished, but normal, cervical lordotic curve.  (pru-green-0171).

In the hospital, Plaintiff's primary care physician, Dr. Michael K. Hill, diagnosed her with

"epilepsy/seizure disorder" and HIV.[1]  (pru-green-0203).  On December 30, 2002, Ms. Green

visited Dr. Debra L. Burris, a neurologist.  (pru-green-0162).  Dr. Burris recommended that she

take Dilantin, an anti-seizure medication, avoid driving, and return to work.  *Id.*  However, Dr.

Hill recommended that Ms. Green remain out of work until February 10, 2003.  (pru-green-

0276).

     Plaintiff returned to work on February 10, 2003.  On February 19, 2003, Plaintiff alleges

---

[1]  The administrative record also reflects that Ms. Green was treated for muscle spasms
and leg pain in early 2002 by Dr. Michael T. Happel.  MRIs of the spine and brain produced
normal results.  (pru-green-0172-75).

that she suffered another seizure and a severe headache.  Plaintiff has not returned to work since

this seizure.  In February 2003, Dr. Hill restricted Ms. Green to no stair climbing and opined that

she could return to work.  (pru-green-0270).  However, in March and April 2003, Dr. Hill

recommended that Ms. Green be granted long-term disability, and that she not return to work

due to her seizure disorder.  (pru-green-0267-68).

        At her office visit on April 15, 2003, Plaintiff reported to Dr. Burris that she had suffered

another seizure.  (pru-green-0159).  Dr. Burris increased her dosage of Dilantin, prescribed

Topamax, and recommended that she remain off work until her next office visit.  *Id.*  On May 13,

2003, Plaintiff underwent an electromyography (EMG) which returned normal results –  normal

nerve conduction studies of the right median, ulnar, and radial nerves.  (pru-green-0245).  On

May 19, 2003, Dr. Burris in correspondence stated that Plaintiff was being treated for a poorly-

controlled seizure disorder, and that she was unable to work at the present time, possibly

extending for a period of six months or longer.  (pru-green-0262).

        From May 2003 to January 2004, Plaintiff had monthly office visits with Dr. Burris.

During all of these visits, Plaintiff reported that multiple seizures had occurred between visits.

(pru-green-0144-46, -0148, -0150, -0152, -0154, and -0156).  In July 2003, Dr. Hill placed the

following limitations on Ms. Green's activities – no driving, no climbing, and no handling of

heavy or dangerous equipment.  (pru-green-0257).  He estimated that Plaintiff's seizures would

be controlled by November 2003.  *Id.*

        From May to September 2003, Plaintiff reported two to three seizures a week, with one

episode of three seizures in one day in September 2003.  (pru-green-0152-54 and -0156).

Plaintiff was hospitalized for seizures in the fall of 2003.  (pru-green-0151).  An EEG performed

in the hospital produced normal results.  *Id.*

During the summer and fall of 2003, Dr. Burris periodically adjusted Plaintiff's anti-seizure medications in an effort to improve Plaintiff's condition.  *See* (pru-green-0180).  Plaintiff reported feeling better in November 2003, with three seizures in five weeks.  (pru-green-0148).  On May 18, 2004, Dr. Burris stated in correspondence that in her opinion Plaintiff continued to be disabled from gainful employment because of her poorly controlled seizures.  (pru-green-0071).

### 2.     HIV Status

Plaintiff also alleges that her disability is affected by her HIV infection.  According to the administrative record, Ms. Green was diagnosed as positive for HIV several years prior to 2002.  (pru-green-0233).  Since her diagnosis, Plaintiff has taken medications which control her viral load and CD4 count.  *Id.*  Plaintiff during this period did not suffer from the opportunistic infections which are a potential side effect of HIV.  (pru-green-0004).  During the entire relevant period from 2002 to 2004, Plaintiff's viral load and CD4 count remained in the acceptable range.  (pru-green-0223-24, -0012-13, -0101-03, and -0212-14).  Lab work on Ms. Green was all within normal limits, and physical examinations were normal.  *Id.*

### B.  Plan Administrator's Denial of Benefits

In May 2003, Bank One requested that Ms. Green apply to Prudential for long-term disability benefits.  Prudential initially denied Plaintiff's claim.  (pru-green-0045-46).  After Plaintiff appealed, Prudential approved Plaintiff's disability benefits for the period between June 28, 2003 and December 31, 2003.  (pru-green-0009).  However, Prudential denied Plaintiff's claim for further disability benefits after January 1, 2004.  *Id.*

Prudential has given several reasons for denial of Plaintiff's claim for disability benefits.  Ms. Green's claim was reviewed by three individuals at Prudential – Susan Iannerelli, a

registered nurse, Drue Wells, a registered nurse, and Joyce Bachman, a physician. (pru-green-0002, -0006, and -0011). Nurse Iannerelli determined that Ms. Green's examination by Dr. Burris on December 30, 2002 was normal, and that Ms. Green had the capacity to return to work on that date. (pru-green-0002). Additionally, Nurse Iannerelli found that Ms. Green's records did not indicate break-through seizures, which would be expected with a seizure disorder. *Id.* Nurse Iannerelli concluded that Ms. Green could return to work with the precautions of avoiding heights and heavy machinery, and of not driving.[2] *Id.* Nurse Iannerelli further found that Plaintiff's HIV infection did not support a finding of disability. *Id.* On this basis, Prudential initially denied Ms. Green's claim. (pru-green-0045-46). Ms. Green appealed.

On appeal, Nurse Wells reviewed Ms. Green's records. (pru-green-0006-08). Nurse Wells determined that although Ms. Green continued to suffer from seizures, all objective tests and physical exams were normal. *Id.* at -0007. Nurse Wells stated that all of Ms. Green's seizures have been self-reported with none being witnessed, and that there was no way to identify what type of seizure Ms. Green was experiencing. *Id.* Nurse Wells found that the medical records did not support Ms. Green's reported seizure activity, and that Ms. Green could return to work because her job was not safety-sensitive. *Id.* Nurse Wells further found no impairment due to HIV. *Id.* at -0008. Despite Nurse Wells' finding of no impairment, Prudential's claim manager approved disability benefits for Ms. Green for six months, and

---

[2] Nurse Iannerelli also found that Plaintiff should go home from work after a break-through seizure. (pru-green-0002). However, Ms. Green's treating physicians and Prudential's other medical reviewers never imposed this restriction. (pru-green-0006-08, -0011, -0071, and -0257).

reasoned that Ms. Green's seizures were improving with medication adjustments.[3] (pru-green-0009).

Dr. Bachman reviewed Ms. Green's records after Plaintiff appealed the termination of her benefits. (pru-green-0011). Dr. Bachman determined that Ms. Green's test results after her first seizure in December 2002 "strongly support a diagnosis of epilepsy." *Id.* However, Dr. Bachman found that there was no objective medical data supporting a seizure disorder since the initial diagnosis in December 2002; all medical testing had produced normal results. *Id.* Dr. Bachman stated that there were no reports of physical injuries from the seizures, and Ms. Green's treating physicians had never identified the type of seizure that Ms. Green experienced. *Id.* Dr. Bachman concluded that Ms. Green "is not in a safety-sensitive job and therefore can return to her own occupation with the following limitations: no driving company vehicles, no operation of hazardous machinery, no work alone, no work at heights[.]" (pru-green-0013). Prudential then determined that Ms. Green's job as a Customer Service Associate involved none of these limitations, and denied Ms. Green's appeal. (pru-green-0015).

Plaintiff challenges Prudential's findings on several grounds. Primarily, Plaintiff contends that Prudential gave insufficient weight to the opinions of Dr. Hill and Dr. Burris, Plaintiff's treating physicians. Plaintiff argues that Dr. Burris in particular has consistently

---

[3] Prudential's finding that Ms. Green's condition had improved in late 2003 is questionable. Nurse Wells, reviewer for Prudential, observed that Ms. Green's seizures "are becoming less frequent since 12/16/03." (pru-green-0007). However, the records do not support this observation. Ms. Green had two seizures in January 2004, and in May 2004 she was reporting one to three seizures per month, the same frequency as in fall 2003. (pru-green-0144-45 and -0071). Moreover, even though Nurse Wells noted improvement, she found that Ms. Green's seizures were not disabling at any point during the claims period. (pru-green-0007). Also, while Ms. Green reported feeling better in October 2003, she was still having multiple seizures per month. (pru-green-0150).

stated that Plaintiff has been disabled from gainful employment since April 2003. Plaintiff alleges that the opinions of Ms. Green's treating physicians are entitled to substantial or controlling weight in this case.[4] In addition, Plaintiff argues that Prudential relied too much on the opinions of its in-house medical reviewers, none of whom examined Ms. Green.[5] Finally, Plaintiff argues that she meets Prudential's definition of disabled in that she cannot perform the material and substantial duties of her job or any job. Plaintiff emphasizes that Dr. Hill placed upon her a limitation of no stair climbing, and her prior position at Bank One's Lake Forest Boulevard office required her to climb stairs to use the restroom.[6]

## III.  Motion for Summary Judgment

## A.  Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to

---

[4] Plaintiff has retreated somewhat from this position. The U.S. Supreme Court has recently stated that the opinions of treating physicians are not entitled to special deference in ERISA cases. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). This is not to say that Plaintiff's physicians are given no deference: "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834.

[5] Prudential's reviewers appeared to question the nature and severity of Ms. Green's seizures. (pru-green-0002, -0007, -0011). If Prudential had doubts about the severity of Ms. Green's seizure disorder, Prudential could have required an independent examination by a neurologist or vocational rehabilitation expert, both of which are common exams during ERISA long-term disability benefit determinations. *See, e.g., Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 827 (2003) (observing that the ERISA plan administrator ordered an independent medical examination by a neurologist in an unclear case). Nothing in Prudential's Policy indicates that independent medical examinations are prohibited and could not have been ordered for Ms. Green. (pru-green-0306-46).

[6] Prudential disputes Plaintiff's assertion that the limitation on stair climbing affects a material and substantial duty of Plaintiff's employment. Prudential notes that Bank One attempted to accommodate this limitation on March 10, 2003 by transferring Ms. Green to another location which did not involve stair climbing. (pru-green-0284). However, Plaintiff did not return to work, so the transfer never occurred.

interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).  To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986).

## B.  ERISA Standard of Review

ERISA provides federal courts with jurisdiction to review benefit determinations by plan administrators.  29 U.S.C. § 1132(a)(1)(B).  The district court reviews two elements of the benefit determination – the factual findings of the administrator and the administrator's interpretation of the ERISA governed policy.  The factual findings of the administrator are entitled to deference and are reviewed under an abuse of discretion standard.  *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991).  The administrator's interpretation of the ERISA governed policy is reviewed by the district court under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to construe the terms of the plan.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a claims administrator has discretionary authority to interpret the terms of an ERISA governed plan, the district court is limited to review of the administrator's interpretation of the plan for abuse of discretion.  *Id.*; *Sweatman v. Commercial Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994).

The ERISA Statement in Prudential's Policy provides that Prudential "as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (pru-green-0341). The parties have not disputed that Prudential has authority to interpret the terms of the Policy. Thus, abuse of discretion review applies both to the administrator's interpretation of the plan and the factual findings of the administrator regarding the plaintiff's claim. *Sweatman*, 39 F.3d at 598.

Under the abuse of discretion standard, the Court must determine if the plan administrator acted arbitrarily and capriciously. *Id.* at 601. A decision is arbitrary when made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)). An administrator's denial of benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *Vega*, 188 F.3d at 299.

Prudential is both the insurer and plan administrator of the Policy, and as such it both pays benefits and determines eligibility for benefits. As both insurer and administrator, Prudential has an inherent conflict of interest. *Lain*, 279 F.3d at 343. When an administrator acts under a conflict of interest, the Court applies a "sliding scale" to the abuse of discretion standard. *Vega*, 188 F.3d at 297. The conflict of interest is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. *Id.* "The greater the evidence of a conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.*

-10-

**B.  Discussion**

In assessing whether to grant or deny benefits, an administrator must make two determinations.  First, the administrator must determine the facts underlying the claim.  *Lain*, 279 F.3d at 343.  Second, the administrator must determine whether the facts establish a valid claim under the terms of the relevant policy.  *Id.*  Prudential argues that, based upon the facts in the administrative record, Ms. Green is not disabled as that term is defined in the Policy.

Prudential's Policy contains two definitions of disability:

> You are disabled when Prudential determines that:
> – you are unable to perform the material and substantial duties of
>    your regular occupation due to your sickness and injury; and
> – you have 20% or more loss in your indexed monthly earnings
> due    to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential
> determines that due to the same sickness or injury, you are unable
> to perform the duties of any gainful occupation for which you are
> reasonable fitted by education, training or experience.

(pru-green-0319).   Prudential informally calls the first paragraph the "your occupation" provision, and the second paragraph the "any occupation" provision.  Prudential evaluated Ms. Green's claim under the "your occupation" provision because Ms. Green had received benefits for less than 24 months.

Although the parties have not briefed these issues, the Fifth Circuit applies a two-pronged test when reviewing an administrator's denial of benefits.  First, the district court must determine the legally correct interpretation of the policy.  *Lain*, 279 F.3d at 344.  Second, if the Court finds that the administrator failed to apply the legally correct interpretation of the policy, then the Court must determine whether the administrator's denial was an abuse of discretion.  *Id.*

-11-

### 1.  Legally Correct Interpretation of the Policy

To determine the legally correct interpretation of the Policy, the Court must consider the following:  1) whether a uniform construction of the policy has been given by the administrator; 2) whether the interpretation is fair and reasonable; and 3) whether unanticipated costs will result from a different interpretation of the policy.  *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) (citing *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 637-38 (5th Cir. 1992)).  The parties have made no allegations regarding the first and third considerations.  Thus, the central issue before the Court is the second consideration – whether the administrator's interpretation of the Policy was fair and reasonable.

Prudential evaluated Ms. Green's claim under the "your occupation" definition of disability under the Policy, which states that a claimant is "disabled when Prudential determines that ... you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury, and you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury."  (pru-green-0319).  Prudential further defines "material and substantial duties" as "duties that ... are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified[.]"  *Id.*  Finally, Prudential defines one's "regular occupation" as  "the occupation you are routinely performing when your disability begins.  Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."  *Id.*

Prudential's medical director, Dr. Bachman, concluded after reviewing Ms. Green's records that Ms. Green "can return to her own occupation with the following limitations: no driving company vehicles, no operation of hazardous machinery, no work alone, no work at heights[.]" (pru-green-0013).  Also, Nurse Iannerelli indicated that Ms. Green "would need to

rest the remainder of the day after experiencing a break-through seizure." (pru-green-0002).
Prudential concluded that these restrictions did not impair her ability to return to her light duty job as a Customer Service Associate.[7] (pru-green-0002 and -0007).

Dr. Bachman's restrictions on Plaintiff's activities are substantially similar to those imposed in July 2003 by Ms. Green's treating physician, Dr. Hill. (pru-green-0257). As they are the same restrictions imposed by Ms. Green's treating physician, Dr. Bachman's restrictions do not appear to be unfair or unreasonable. Ms. Green's position as a Customer Service Associate was described by both her and Prudential as "light." This means that Plaintiff frequently must lift up to 10 pounds, occasionally must lift up to 20 pounds, and/or she must frequently walk or stand, and/or there is constant pushing and pulling. (pru-green-0254; pru-green-0011-13). This description involves none of the restrictions imposed by Doctors Bachman and Hill.

Ms. Green emphasizes that Dr. Hill restricted her to no stair-climbing, and that her prior position at Bank One required her to climb stairs to use the restroom. However, Bank One attempted to accommodate this restriction by placing her at a different bank branch. (pru-green-0284). Also, Prudential's definition of "regular occupation" requires Prudential to review a claimant's occupation as it is normally performed, rather than as it is performed at a specific location. (pru-green-0319). On this basis, Prudential determined that stair-climbing was not a material or substantial duty of Ms. Green's occupation. Under the constraints of the Policy and the Court's own deferential review, Prudential's finding was not unreasonable.

---

[7] Prudential also determined that Ms. Green's HIV status did not render her disabled under the Policy. (pru-green-0033). The Court finds that that decision was not arbitrary or capricious.

Another issue regarding Prudential's interpretation of the Policy is the frequency of Ms. Green's seizures. Nurse Iannerelli, one of Prudential's reviewers, indicated that Plaintiff would need to take the day off from work after every seizure. However, none of the other reviewers imposed this restriction. If Plaintiff was having very frequent seizures, she would meet Prudential's definition of "disabled" because she would be out of work for a substantial portion of every month: she would be unable to perform any material and substantial duties of her job while at home after seizures. The following summarizes Ms. Green's seizure activity as reported in the administrative record:

| | |
|---|---|
| Dec. 2002 | Two seizures (pru-green-0162) |
| Jan. 2003 | No medical reports |
| Feb. 2003 | One seizure (pru-green-0283) |
| Mar. 2003 | No medical reports |
| Apr. 2003 | Two to three seizures per week since Dec. 2002 (pru-green-0159) |
| May 2003 | Three to four in two weeks (pru-green-0156) |
| Jun. 2003 | No medical reports |
| Jul. 2003 | Two seizures (pru-green-0155) |
| Aug. 2003 | Two to three seizures per week (pru-green-0154) |
| Sept. 2003 | Three seizures in one day; hospitalization due to seizures (pru-green-0153) |
| Oct. 2003 | Two seizures (pru-green-0150) |
| Nov. 2003 | Three seizures (pru-green-0148) |
| Dec. 2003 | Two seizures (pru-green-0146) |
| Jan. 2004 | Two seizures (pru-green-0144 and -0145) |

Feb. to April 2004       No medical reports

May 2004       One to three seizures per month (pru-green-0071).

These reports are somewhat inconclusive.  As Prudential argues, Ms. Green's seizures have all been self-reported, with none being witnessed except for the initial seizure.  Objective testing on Ms. Green has come back normal since December 2002, and she has not suffered physical injuries from her seizures.

Even giving Ms. Green the benefit of the doubt regarding the frequency and severity of her seizures, her reports of one to three seizures per month would not necessarily be disabling under the Policy.  Only one reviewer recommended that Ms. Green go home from work after a seizure; others indicated that she could work under certain restrictions.  Moreover, even if Ms. Green went home after every seizure, at the rate of one to three seizures per month, Ms. Green would likely not be out of work enough to meet the 20% threshold indicated by the Policy.  (pru-green-0319) (requiring claimants to "have a 20% or more loss in your indexed monthly earnings due to that sickness or injury" to qualify for benefits).

Thus, Prudential's determination that Ms. Green could perform the material and substantial duties of her occupation was not unfair or unreasonable.  The finding was based upon evidence in the record, even though that evidence is ambiguous.  Given the constraints of the Court's review for abuse of discretion, the Court finds that Prudential applied the legally correct interpretation of the Policy.  Thus, Prudential's decision to deny benefits was not an abuse of discretion.

**III.  Conclusion**

      Accordingly, the Plaintiff's Motion for Summary Judgment is DENIED and the Defendant's Motion for Summary Judgment is GRANTED.  Defendants' Motion to Strike the Affidavit of Shernita Green is GRANTED.

New Orleans, Louisiana, this <u>3rd</u> day of August, 2005.

_____
UNITED STATES DISTRICT JUDGE